UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:18-CV-74-EBA

LYNN MAGGARD, PLAINTIFF,

V.    MEMORANDUM OPINION AND ORDER

NANCY A. BERRYHILL, Acting Commissioner
of Social Security, DEFENDANT.

In this appeal from the Administrative Law Judge's opinion denying her application for benefits, the plaintiff argues that the ALJ committed two distinct errors. First, Lynn Maggard contends that in determining her Residual Functional Capacity, the ALJ erred by failing to include restrictions espoused by her treating physician. Second, she argues that the ALJ erred by applying the wrong legal standard when rejecting her own statements of disability. The issues have been fully briefed and are now ripe for consideration. As explained below, the Defendant's Motion for Summary Judgment [R. 18] will be granted, and the Plaintiff's Motion for Summary Judgment [R. 13] will be denied.

**PROCEDURAL HISTORY**

The relevant procedural history of this action is not a matter of dispute. The plaintiff, Lynn Maggard, filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that she began suffering from the disabling effects of rheumatoid arthritis and shoulder pain on March 27, 2014. Following a hearing before an ALJ on October 19, 2017, her claims for disability benefits were denied by opinion dated November 8, 2017. The

Appeals Counsel then denied her request for review, and this appeal followed pursuant to title 42, United States Code §§ 405(g), 1383(c)(3).

## **STANDARD OF REVIEW**

When reviewing a finding that a plaintiff is not disabled under the Social Security Act, this Court considers whether the decision is supported by substantial evidence and whether the ALJ employed the proper legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989); *Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 237–38 (6th Cir.2002); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). In this case, the same standard of review applies to all the claims pending before the Court.

## **ANALYSIS**

To be considered disabled under the Social Security Act, a person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Foster v. Halter,* 279 F.3d 348, 353 (6th Cir.2001). Under 42 U.S.C. § 1382c(a)(3)(B), an individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). In addition, the "plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993). *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.").

This Court employs a five-prong test to evaluate disability claims: First, the claimant must show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work. *Foster,* 279 F.3d at 354 (citations omitted); *see also* 20 C.F.R. § 404.1520.

In the instant case, Maggard was not engaged in substantial gainful activity. She was able to demonstrate the presence of a severe impairment that did not meet or equal a listing, and she was able to demonstrate that she was unable to engage in her past relevant work.

However, her application for benefits was denied because the ALJ found that considering her residual functional capacity, which is a determination of the most that she was able to do, she was able to engage in other gainful activity.

In her first claim of error, the plaintiff asserts that the Residual Functional Capacity articulated by the ALJ is not supported by substantial evidence because the ALJ failed to explain why he did not adopt all limitations set out in a medical source opinion that he considered persuasive and favorable to Maggard. However, contrary to the plaintiff's assertions, the ALJ properly articulated the basis for the restrictions contained within the RFC, and the plaintiff's claim is therefore unpersuasive.

The physicians who rendered opinions regarding Maggard's physical abilities and limitations include: Dr. Jaya Pampati, MD, the plaintiff's treating rheumatologist; Dr. Jeffrey Henson, M.D., a physician who performed a consultative examination; and state agency physician John Gedmark, M.D. The crux of the Plaintiff's argument is that the ALJ incorrectly fashioned restrictions for reaching, and bilateral handling and fingering into the residual functional capacity which was considered by the vocational expert when rendering an opinion that jobs exist in the national economy that she can perform. As correctly noted by the ALJ, the physicians gave the following opinions relevant to the current analysis: 1. Dr Pampati opined that Maggard could *occasionally* reach and *occasionally* handle and finger; 2. Dr. Henson opined that Maggard could *occasionally* reach, and *frequently* handle and finger. 3. Dr. Gedmark opined that Maggard could *frequently* push and or pull with the left arm, *occasionally* work overhead and *frequently* use the left hand for handling and fingering.

Based upon the evidence, the ALJ formulated a residual functional capacity, stating that "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant is limited to sedentary work with no more than *frequent* pushing and pulling with the left arm, no climbing of ropes, ladders or scaffolds, and no more than frequent climbing of stairs and ramps. She is limited to occasional stooping, kneeling, crouching and crawling. She is limited to *occasional* working with the hands overhead and *frequent* use of the left non dominant hand for handling or fingering. There must be no exposure to concentrated temperature extremes [and] industrial hazards." [R. 11-1, p. 27].

Simply, the plaintiff contends that the ALJ committed error by failing to incorporate Dr. Pampati's opinion that she could only occasionally, rather than frequently, handle and finger, and that the ALJ failed to explain his reasons for rejecting that opinion, although the ALJ accorded Dr. Pampati's opinion significant weight.

It should be noted that the claimant retained the burden of establishing her RFC limitations in this case before the ALJ, while the Commissioner was tasked with establishing that jobs exist within the national economy within the claimant's ability to perform. *Jordon v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . The claimant, however, retains the burden of proving her lack of RFC."); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999). In the instant case, the ALJ complied with his obligations in articulating the reasons he accepted some opinions and not others. In doing so, he stated as follows:

5

As well, the Administrative Law Judge considered the opinion of treating source Dr. Pampati as discussed above. In a disability certificate dated March 27, 2014, he certified the claimant is "completely disabled for any occupation for 12 weeks" and in March 2016 he certified the claimant is "completely disabled for any occupation." Disability is an issue reserved to the Commissioner. Nevertheless, the undersigned considered his treating notes and assessments overall. He submitted an assessment dated October 14, 2015 that limits the claimant to essentially sedentary work activities. Then, in October 2017, he recommended the use of a cane curing rheumatoid arthritis flares. The undersigned considered and gave his assessment significant weight in assigning the residual functional capacity limiting the claimant to sedentary work activities, as it is in line with the opinion of consultative examiner Dr. Henson to whom the undersigned also gave significant weight.

> In summary, based on the above-discussed evidence and findings, the undersigned finds that she retains the ability to perform work within the parameters of the above residual functional capacity. She quit working in 2014 after she tore a meniscus and "tore" her right rotator cuff. However, according to the medical evidence of record, she only had a strain of the right shoulder that was treated with a sling and she has had no subsequent surgery, only physical therapy. As for her knee complaints, this was treated with steroid shots. Reasonably, her physician placed her on light work after knee and shoulder injuries. She now alleges that she was diagnosed with rheumatoid arthritis in 2013, albeit, this was before she stopped working in 2014. **In any event, her rheumatologist, Pampati Jayalakshmi, MD, reported she has debilitating impairments, which is inconsistent with his treatment notes and reports that she had mildly decreased grip strength in the left hand with mild changes in the left wrist and finger joints of the right hand. Further, he found no evidence of acute or active synovitis in all other joints. There were no focal deficits, she had normal gait and only mild degenerative changes were demonstrated on x-ray imaging of the left wrist.** The prior adjudicator limited the claimant to light work activities; however, in light of the consultative examination findings of Jeffrey Henson, MD and of the assessment of rheumatologist Dr. Pampati, the undersigned concludes the claimant is limited to sedentary work.

[R. 11-1, pp 32-33] (emphasis added).

Clearly, the ALJ articulated the reasons he declined to accept Dr. Pampati's restrictions on reaching, and handling and fingering. In doing so, he relied on competent evidence of record and committed no error. Although an RFC assessment must always consider and address medical source opinions, if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. "[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination – especially when such limitations are set forth in opinions the ALJ weighs favorably." *Ledford v. Colvin*, CV 15-217-WOB-CJS, 2016 WL 4045427, at *5-6 (E.D. Ky. June 21, 2016). *report and recommendation adopted*, CV 15-217-WOB-CJS, 2016 WL 4046993 (E.D. Ky. July 27, 2016) (quoting *Marshall v. Comm'r of Soc. Sec.*, No. 3:14-CV-465, 2015 WL 7273113, at *6 (S.D. Ohio Nov. 17, 2015), *adopted by* 2015 WL 8682785, at *1 (S.D. Ohio Dec. 11, 2015)) (internal citation omitted); *see also Hann v. Colvin*, No. 12-CV-06234-JCS, 2014 WL 1382063, at *22 (N.D. Cal. Mar. 28, 2014) (finding that "where an ALJ has already found a physician's opinions to be credible and concrete, an ALJ can err by omitting aspects of that physician's opinions from the RFC").

However, in this case, the ALJ stated that although Dr. Pampati believed Maggard suffered from debilitating impairments, the objective evidence in his records showed that she had only mildly decreased grip strength in the left hand with mild changes in the left wrist and finger joints of the right hand. In addition, the ALJ remarked that Dr. Pampati found no evidence of acute or active synovitis in all other joints. In fact, there were no focal deficits, and Maggard had had normal gait and only mild degenerative changes observed on x-ray imaging of the left wrist. Thus, the record in this action demonstrates that the ALJ complied

7

with his obligation to explain, based upon the evidence of record, his reasons for failing to incorporate all of Dr. Pampati's restrictions in the RFC. Therefore, there is no error and the plaintiff's claim will be denied. "It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact." See *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir. 1987)).

Next, the plaintiff disputes the vocational expert's testimony that jobs exist in the national economy as the jobs the expert listed all allegedly require frequent reaching, rather than occasional reaching, and cannot therefore be performed by the claimant.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir.1987) (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984)) (alteration in original) (emphasis added). "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny,* 745 F.2d at 218; *see also Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir.1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments.").

In this case, having previously determined that the ALJ accurately portrayed Maggard's physical limitations, the result is that the ALJ's reliance on the Vocational Expert's testimony to a proper question provides the ALJ with substantial evidence on which to deny the Plaintiff's claim for disability benefits. Again, the court's focus at this stage of the litigation is substantial evidence, that is to say whether the decision is supported by substantial evidence and whether the ALJ employed the proper legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989); *Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 237–38 (6th Cir.2002); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Because the decision in this case is supported by substantial evidence, the Court can find no error. Even if the Court would have decided the matter differently than the ALJ, as long as substantial evidence supports the ALJ's decision, it must be affirmed. *Buxton v. Halter*, 246 F.3d at 772; *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996).

Finally, Maggard argues that the ALJ failed to apply the appropriate legal standard in rejecting her allegations of disability and considering her refusal of treatment and medication. Clearly, Maggard is unhappy with the ALJ's failure to believe Maggard's statements of her own disability. And, although couched as an argument asserting that the ALJ failed to apply the correct legal standard, what Maggard actually presents is an argument that the ALJ's determination was not supported by substantial evidence. It should be noted that "an ALJ's credibility determinations about the claimant are to be given great weight," *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007), as determining whether Plaintiff was disabled

is ultimately the responsibility of the ALJ, *See Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x at 439 (6th Cir. 2010). In this case, the ALJ's decision was supported by substantial evidence and should not be disturbed. In considering the case and the plaintiff's testimony in comparison with the objective medical evidence of record, the ALJ stated, as follows:

> After careful consideration of the evidence as discussed above, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record and does not support eh loss of functioning to the disabling degree alleged.
>
> In reaching the above residual functional capacity, the undersigned considered the claimant's alleged symptoms and allegations in light of the objective medical evidence, other evidence and relevant factors. However, the medical evidence does not support the loss of functioning the claimant alleges. She has received routine and conservative treatment for complaints for fatigue and joint pain. When Mobic caused side effects, she did not follow-up with Dr. Pampati, but stopped taking medication as prescribed without consulting him. She testified she sustained a meniscus tear to her knee but she never had any surgery, although she did undergo physical therapy. She refused a low dose of prednisone and refused local injection of cortisone for her finger. She quit taking NSAIDS. Such behavior suggests pain and complaints are not as severe as alleged.
>
> As noted earlier, the claimant is obese at over 200 pounds, which calculates to body mass index of 35.02. Her weight has fluctuated little since 2014 when her weight was over 200 pounds with body mass index of 35.06. Although her physicians periodically counsel her on diet and exercise, in spite of her weight, generally physical examinations of record do not remark on her weight other than to to record it. There were no reports of inability to ambulate well, although as of October 5, 2017, Dr. Pampati recommended the use of a cane during arthritis flares. Neurological status reports noted motor power, reflex activity and sensation were largely intact. There are no significant objective medical findings of record to support more than minimal limitation in activities because of obesity. Her weight has been at 200 or more for several years and only several months following her knee injury, her weight was over 200 pounds. Thus, obesity did not interfere with work activities.

[R 11-1; pp. 26-27].

Maggard contends that the ALJ declined to give Maggard's statements of disability controlling weight due to her testimony that she ceased taking medication without consulting with her physician, refused treatments and stopped taking NSAIDS. However, a broader picture emerges from a review of the record. As articulated by the ALJ, other objective evidence of record was considered and weighed in determining the weight to give the the claimant's own testimony, including the fact that she has received routine and conservative treatment for complaints for fatigue and joint pain. Although she was determined to be morbidly obese, her physicians periodically counseled her on diet and exercise, but her general physical examinations of record revealed no remark on her weight other than to to record it. There were no reports of inability to ambulate well, although as of October 5, 2017, Dr. Pampati recommended the use of a cane during arthritis flares. Neurological status reports noted that Maggard's motor power, reflex activity and sensation were largely intact. In addition, there were no significant objective medical findings of record to support more than minimal limitation in activities because of obesity. Her weight was recorded at 200 pounds or more for several years and only several months following her knee injury, her weight was over 200 pounds. Thus, the ALJ determined that obesity did not interfere with work activities. In summary, the weight given to Maggard's testimony was not based solely on evidence of failure to comply with treatment instructions. Instead, it was based upon evidence of normal neurological testing as well as lack of difficulty ambulating and evidence of only conservative treatment. As a result, the undersigned determines that the ALJ's findings are supported by substantial

evidence, as the determination contains specific reasons for the weight given to Maggard's symptoms, are consistent with and supported by the evidence, and are clearly articulated so that Maggard and any subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. See SSR 16-3p. Therefore, Maggard's argument that the ALJ failed to give appropriate reasons for failing to accept all of her statements of disability is supported by substantial evidence

## **CONCLUSION**

For the foregoing reasons, it is ORDERED that the plaintiff's Motion for Summary Judgment [Record No. 13] be DENIED, the Defendant Commissioner's Motion for Summary Judgment [Record No. 18] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Signed July 31, 2019.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge